1  BROWN WHITE & OSBORN LLP
   KENNETH P. WHITE (SBN 173993)
2  333 S. Hope Street, 40th Floor
   Los Angeles, CA 90071
3  Tel.: (213) 613-0500
   Fax: (213) 613-0550
4  kwhite@brownwhitelaw.com

5  Local Counsel for Defendants
   CIPLA, LTD. and CIPLA USA, INC.

6

7  WILEY REIN LLP
   NEAL SETH (*Pro Hac Vice*)
8  KARIN HESSLER (*Pro Hac Vice*)
   1776 K. Street NW
9  Washington, DC 20006
   Tel.: 202.719.7000
10 Fax: 202.719.7049
   nseth@wileyrein.com
11 khessler@wileyrein.com

12 Counsel for Defendants
   CIPLA, LTD. and CIPLA USA, INC.

13

14            **UNITED STATES DISTRICT COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16

17 STEPHANIE PATTON and KENDRICK       Case No. CV 17-00922 MWF-DTB
   KNIGHTEN,
18                                      DEFENDANTS CIPLA USA, INC.'S
            Plaintiffs,                 AND CIPLA LTD.'S NOTICE OF
19                                      MOTION AND MOTION TO DISMISS
                                        ALL CLAIMS AGAINST CIPLA USA,
20 FOREST LABORATORIES, INC.,           INC. AND CIPLA LTD;
   RIVERSIDE COUNTY REGIONAL           MEMORANDUM OF POINTS AND
21 MEDICAL CENTER, TARGET               AUTHORITIES
   CORPORATION, ALLERGAN, PLC.,         [FED. R. CIV. P. 12(b)(6)]
22 CVS PHARMACY, INC., TEVA
   PHARMACEUTICALS USA, INC.,
23 LUPIN PHARMACEUTICALS, INC.,
   ALLERGAN, INC., CIPLA USA, INC.,
24 ACTAVIS, PLC., CIPLA LTD., and       Date:  September 18, 2017
   DOES 1-20, inclusive,                Time:  10:00 a.m.
25                                      Ctrm:  5A
26

27          Defendants.

28

TO PLAINTIFFS STEPHANIE PATTON AND KENDRICK KNIGHTEN, AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on the 18th day of September 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5A of the above-captioned Court, located at 350 West First Street, Los Angeles, California, 90012, defendants CIPLA USA, INC. and CIPLA LTD ("Cipla") will move this Court for an order dismissing plaintiffs' claims against Cipla pursuant to Fed. R. Civ. P. 12(b)(6).

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 31, 2017.

Dated:  August 7, 2017          Respectfully submitted,


By   s/Kenneth P. White
    _____

    BROWN WHITE & OSBORN LLP
    KENNETH P. WHITE (SBN 173993)

    Local Counsel for Defendants
    CIPLA, LTD. and CIPLA USA, INC.


    WILEY REIN LLP
    NEAL SETH (*Pro Hac Vice*)
    KARIN HESSLER (*Pro Hac Vice*)

    Counsel for Defendants
    CIPLA, LTD. and CIPLA USA, INC.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

    A.    Cipla's Manufacture and Sale of Escitalopram ............................. 2

    B.    Plaintiffs' Deficient Allegations .................................................... 3

III.    LEGAL STANDARDS .............................................................................. 4

    A.    Pleading Standards ......................................................................... 4

    B.    Hatch-Waxman Act ........................................................................ 5

    C.    Preemption ...................................................................................... 7

IV.     ARGUMENT.............................................................................................. 8

    A.    Plaintiffs Fail to State a Claim Against Cipla ............................... 8

        1.   Plaintiffs Have Not Alleged that K.K. Ingested Any Cipla Product ............................................................. 9

        2.   Plaintiffs' Claims Improperly Lump Defendants Together............ 9

        3.   Plaintiffs Cannot Satisfy the Rule 9(b) Standard for Their UCL, CLRA, and Fraud Claims ..................................... 11

    B.    Plaintiffs' Claims Are Preempted by Federal Law and Must Be Dismissed ....................................................................... 12

        1.   Plaintiffs' Failure to Warn Claims Are Preempted ...................... 14

        2.   Plaintiffs' Nebulous Design and Manufacturing Defects Are Preempted ........................................................ 16

        3.   Plaintiffs' California UCL and CLRA Claims Are Preempted..... 18

    C.    Plaintiffs Failed to Meet the Notice Requirements Mandated by California Civil Code Section 1782(a).................................... 19

V.      CONCLUSION ........................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Gaeta ex rel. A.G. v. Perrigo Pharms. Co.,*
469 F.App'x. 556 (9th Cir. 2012) .................................................................. 13, 14, 16

*In re Apple and AT & T iPad Unlimited Data Plan Litigation,*
802 F.Supp.2d 1070 (N.D. Cal. 2011) ...................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................................................. 4, 5, 9

*Atuahene v. City of Hartford,*
10 F.App'x. 33 (2d Cir. 2001) ............................................................... 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................. 4, 5

*Bowdrie v. Sun Pharmaceutical Industries Ltd.,*
909 F.Supp.2d 179 (E.D.N.Y 2012) ...................................................... 14

*Brinkley v. Pfizer, Inc.,*
No. 10-0274 2012, WL 1564945 (W.D. Mo. May 22, 2012) ................. 14

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997) ............................................................... 5, 11

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) .............................................................................. 7

*In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.,*
756 F.3d 917 (6th Cir. 2014) ............................................................... 8

*Drager v. PLIVA USA, Inc.,*
741 F.3d 470 (4th Cir. 2014) ............................................................... 8, 17

*Eckhardt v. Qualitest Pharm., Inc.,*
751 F.3d 674 (5th Cir. 2014) ............................................................... 8

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II),*
No. 2243 (JAP-LHG), 2012 WL 181411 (D.N.J. 2012) ....................... 13

*In re Fosamax Products Liab. Litig.,*
751 F.3d 150 (3d Cir. 2014) ............................................................... 8, 17

*Freightliner Corp. v. Myrick,*
514 U.S. 280 (1995) .............................................................................. 7

*In re GlenFed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994) ............................................................... 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Guarino v. Wyeth*,
   719 F.3d 1245 (11th Cir. 2013) ................................................................. 8

*Holmes v. Hospira, Inc.*,
   No. EDCV 12-01708 VAP (DTBx), 2013 WL 12132046 (C.D. Cal.
   Jan. 10, 2013) .................................................................................*passim*

*Johnson v. Teva Pharm. USA, Inc.*,
   758 F.3d 605 (5th Cir. 2014) ................................................................... 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................. 5

*Ko v. Mutual Pharmaceutical Co.*,
   No. C-13-00890-RMW, 2013 WL 5692375 (N.D. Cal. Oct. 18, 2013) ................ 16

*Lashley & Del Valle v. Pfizer, Inc.*,
   750 F.3d 470 (5th Cir. 2014) ................................................................... 8

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp.2d 1181 (S.D. Cal. 2005) .................................................... 19

*Moretti v. Mutual Pharm. Co.*,
   518 F.App'x. 486 (8th Cir. 2013) ............................................................ 8

*Moretti v. Mutual Pharm. Co.*,
   852 F. Supp. 2d 1114 (D. Minn. 2012) .................................................. 15

*Mutual Pharm. Co., Inc. v. Bartlett*,
   133 S. Ct. 2466 (2013) ..................................................................... 2, 16

*Papike v. Tambrands, Inc.*,
   107 F.3d 737 (9th Cir. 1997) ................................................................. 17

*Perez v. Nidek Co.*,
   657 F. Supp.2d 1156 (S.D. Cal. 2009) ...................................... 13, 14, 18

*Pliva, Inc. v. Mensing*,
   564 U.S. 604 (2011) .......................................................................*passim*

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................. 5

*Strayhorn v. Wyeth Pharm.*,
   737 F.3d 378 (6th Cir. 2013) ................................................................. 17

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
   922 F.Supp. 299 (C.D. Cal. 1996) ..................................................... 14, 18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...................................................................... 9

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 5

## State Cases

*Eckler v. Neutrogena Corp.*
  (2015) 238 Cal.App.4th 433 ...................................................................... 18

*Sindell v. Abbott Labs.*,
  (1980) 26 Cal.3d 588 ................................................................................. 10

## Federal Statutes

21 U.S.C. § 355(j)(2)(A) ........................................................................ 3, 8, 21

21 U.S.C. § 355(j)(2)(A)(i)-(iii) ................................................................... 17

## State Statutes

Business and Professions Code Section 17200 ....................................*passim*

California Civil Code Section 1770 ....................................................... 11, 19

California Civil Code Section 1782(a) .................................................. 19, 20

California Civil code Section 1782(a)(3) ...................................................... 19

## Regulations

21 C.F.R. § 314.50(c)(2)(i) ........................................................................... 5

21 C.F.R. § 314.94(a)(8) ............................................................................... 6

21 C.F.R. § 314.150(b)(10) .......................................................................... 6

## Other Authorities

Fed. R. Civ. P. 8 ..................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................*passim*

Fed. R. Civ. P. 9(b) .............................................................................*passim*

U.S. Const. art. VI, cl. 2 ...................................................................... 7, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

Defendants, CIPLA, LTD. and CIPLA USA, INC., (collectively, "Cipla") by and through their counsel, file this Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) [1].

Plaintiffs assert this product liability action against various manufacturers and distributors of the prescription drug Lexapro (including generic version Escitalopram), alleging it caused decedent K.K. to commit suicide. (Docket No. 1-2, Complaint ("Compl.")).  Escitalopram is the generic form of co-defendant Forest Laboratories Inc.'s ("Forest") Lexapro®, an FDA-approved prescription drug.  Plaintiffs' Complaint asserts causes of action captioned as "product liability," "fraud and deceit," "breach of warranty," "violation of California Civil Remedies Act," "violation of Business and Professions Code section 17200," "negligence," and "wrongful death." (*See id.*). Plaintiffs' Complaint contains no specific allegations against Cipla, but instead makes general allegations against "each Defendant" and "all Defendants."

Specifically, Plaintiffs do not allege that K.K. ingested any Cipla product. Rather, Plaintiffs solely allege that K.K. was prescribed and ingested "Lexapro and/or Escitalopram." (Compl. ¶ 26.)  Because Plaintiffs do not allege that Cipla manufactured the specific Escitalopram product alleged to have caused K.K.'s suicide, Plaintiffs' claims against Cipla must be dismissed as a matter of law for failure to state a claim.

Further, even if decedent K.K. had taken an escitalopram drug product made by Cipla, Plaintiffs' claims against Cipla are preempted by federal law.  Though wrapped in various legal theories, each of Plaintiffs' claims against Cipla is, in essence, a failure-to-warn claim for purportedly inadequate warnings for its generic escitalopram. However, because Cipla manufactured and distributed escitalopram pursuant to an

---

[1] Cipla Ltd. has not been served in this action and does not waive or consent to service by joining this motion.

Abbreviated New Drug Application ("ANDA") approved by the U.S. Food and Drug Administration ("FDA"), which specified the content of Cipla's labeling, Plaintiffs' failure to warn claims are preempted pursuant to *Pliva, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466 (2013).

For the reasons explained below, each and every cause of action presented against Cipla is preempted, fails to satisfy federal pleading standards, or both. Moreover, Plaintiffs' claims are barred for failure to satisfy state-law notice requirements. Accordingly, Cipla respectfully requests that this Honorable Court dismiss Causes of Action I-VII in their entirety, with prejudice.

## II.  FACTUAL BACKGROUND

### A.  Cipla's Manufacture and Sale of Escitalopram

Escitalopram is in a class of prescription drugs known as selective serotonin reuptake inhibitors (SSRI), which are typically used as antidepressants in the treatment of major depressive disorder and anxiety disorders. Escitalopram was first manufactured and sold by Forest under the brand name Lexapro®. FDA approved Forest's New Drug Application ("NDA") for Lexapro® in August 2002 for the treatment of major depressive disorder. Subsequently, other drug companies developed a generic escitalopram product, and FDA tentatively approved the ANDA now owned by Cipla's affiliate on August 21, 2007. Many other generic drug companies also received approval for and/or marketed escitalopram.

In order to manufacture generic escitalopram, ANDA No. 078604, now owned by Cipla's affiliate, was submitted to FDA which demonstrated both bioequivalence to Lexapro® and proposed labeling that was materially identical to Lexapro®. *See* 21 U.S.C. § 355(j)(2)(A). While reviewing the ANDA and determining whether to grant approval, FDA reviewed and approved the proposed labeling, which was determined to be identical in all material respects to Lexapro®. After the ANDA was approved, federal law required the ANDA holder to keep its labeling and design consistent with the approved labeling and design for Lexapro®. *See Mensing*, 564 U.S. at 613-617.

**B.      Plaintiffs' Deficient Allegations**

Plaintiffs' Complaint asserts various causes of action captioned as "product liability," "fraud and deceit," "breach of express warranty," "violation of California CLRA," "violation of Business and Professions Code section 17200," "negligence" and "wrongful death" against various manufacturers and distributors of the prescription drug Lexapro® and generic escitalopram, alleging it caused decedent K.K. to commit suicide. (*See* Compl.)  Plaintiffs' Complaint contains no specific allegations against Cipla, but instead asserts general allegations against "each Defendant" and "all Defendants."

Plaintiffs solely allege that decedent K.K. was prescribed and ingested "Lexapro and/or Escitalopram" without specifying the exact product ingested or even whether K.K. ingested the brand-name Lexapro® or generic escitalopram. (Compl. ¶ 26.) Plaintiffs' allegations are general and not directed to Cipla or any Cipla product.

Despite the different labels given for Plaintiffs' various causes of action, the essence of all of Plaintiffs' claims is that adequate warning as to generic escitalopram was not disseminated, or made clear, to the public or to the medical community.  For example:

a) Product liability: "Defendants failed and refused to include adequate, required and/or sufficient warnings . . . ." (Compl. ¶ 31.)

b) Fraud and deceit: "Defendants . . . misrepresented the safety of Lexapro and Escitalopram . . . and concealed warnings of the known or knowable risks . . . ." (Compl. ¶ 51.)

c) Breach of warranty: "Defendants knew that patients and parents had the right to know about the harmful, known side effects of Lexapro and Escitalopram . . . but concealed and intentionally misrepresented same." (Compl. ¶ 62.)

d) Violation of California Civil Remedies Act: "Defendants knew that patients and parents had the right to know about the harmful, known side

- 3 -

DEFENDANTS CIPLA USA, INC.'S AND CIPLA LTD.'S MOTION TO DISMISS

effects of Lexapro and Escitalopram . . . but concealed and intentionally misrepresented same." (Compl. ¶ 67.)

e) <u>Violation of Business and Professions Code section 17200</u>: "Defendants . . . were aware of the foregoing risks and elected to proceed despite such risk . . . ." (Compl. ¶ 71.)

f) <u>Negligence</u>: "Defendants each breached their duty . . . [by] failing to properly label, inform, advise, warn, caution and truthfully notify . . . about the dangers of Lexapro and Escitaprolam . . . " (Compl. ¶ 74.)

g) <u>Wrongful death</u>: "Defendants knew that patients and parents had the right to know about the harmful, known side effects of Lexapro and Escitalopram . . . but concealed and intentionally misrepresented same." (Compl. ¶ 80.)

Plaintiffs' Complaint is replete with conclusory and seemingly identical arguments against all Defendants, which include brand-name and generic manufacturers of escitalopram, and fails to allege even a single specific claim against Cipla. Indeed, all of Plaintiffs' allegations are directed to "Defendants" or "Defendants (and each of them.)" (*See* Compl. ¶¶ 14, 16). Notably, Plaintiffs do not allege a single cause of action specific to Cipla. And none of Plaintiffs' allegations factually support any claims against Cipla.

## III.   LEGAL STANDARDS

### A.   Pleading Standards

Plaintiffs' claims are all subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as pled. *See* Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept legal conclusions as true, even when stated as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a)(2) does not require detailed factual

- 4 -

BROWN WHITE & OSBORN™
A T T O R N E Y S

support for the pled allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-557). The Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing the party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Additionally, the heightened pleading standard of Rule 9(b) applies to state law claims founded in fraud that are brought in a federal action. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003). The fraudulent conduct must be alleged with particularity under Rule 9(b). *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). And a party alleging fraud must "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), (superceded by statute on other grounds).

## B.     Hatch-Waxman Act

Pursuant to the Federal Food, Drug and Cosmetic Act ("FDCA"), the FDA regulates the approval of both brand name and generic drugs. *See* 21 C.F.R. §

314.50(c)(2)(i) (brand name); 21 C.F.R. § 314.94(a)(8) (generic).  Approval for a new drug may be obtained only by filing a New–Drug Application ("NDA") with the FDA. The NDA process is both lengthy and expensive.

In an effort to make generic versions of brand-name drugs more widely, safely, and inexpensively available, Congress in 1984 passed the Drug Price Competition and Patent Term Restoration Act, also commonly known as the Hatch–Waxman Act ("Hatch-Waxman").  Hatch-Waxman provides for an expedited, less costly approval process for generic versions of drugs whose brand-name predecessors have already obtained FDA approval.  Once the brand-name manufacturer's patent expires, generic manufacturers can enter the market with the benefit of a far more streamlined approval process.  This generic drug application process is referred to as the Abbreviated New Drug Application ("ANDA").

Hatch-Waxman changed the approval requirements for generic drugs to require only submission of an ANDA to show a generic drug is identical in all material respects to a previously-approved NDA, i.e., a brand name drug.  21 U.S.C. § 355(j)(2)(A). Hatch-Waxman also requires that the "labeling proposed [for an ANDA] . . . is the same as the labeling approved for the [brand name] drug."  *Mensing*, 564 U.S. at 612-13. Therefore, in contrast to an NDA applicant's responsibility to demonstrate the accuracy and adequacy of its warnings, an ANDA applicant need only demonstrate that its "warning label is the same as the brand name's" to receive FDA approval.  *Id.*

Moreover, after FDA approval of an ANDA, the only duty incumbent upon a generic manufacturer under federal law with respect to its warnings is an ongoing duty of "sameness" — to ensure its generic drug's labeling remains identical to the Reference Listed Drug ("RLD") to which it is required to remain equivalent. *Id.* Generic manufacturers are prohibited from independently changing their labeling in any respect without prior FDA approval.  *Id.* at 617 ("Federal drug regulations, as interpreted by the FDA, prevented the Manufacturers from independently changing their generic drugs' safety labels."); *see also* 21 C.F.R. § 314.150(b)(10) (authorizing

FDA to revoke approval of a generic drug if its labeling "is no longer consistent with that for the listed drug").  Thus, for a generic manufacturer to independently change its warning labeling, even to strengthen it, would violate federal law.  *Mensing*, 564 U.S. at 614-15.  Indeed, federal law explicitly requires a generic drug to be "identical [to its branded equivalent] in active ingredients, safety, and efficacy," just as each generic drug must ensure that its warning label is the same as the brand name label.  *Id.* at 612 n.2.

### C.    Preemption

The Supremacy Clause states that federal law "shall be the supreme Law of the Land . . . and any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  State law is preempted "to the extent of any conflict with a federal statute" irrespective of whether such conflict is express or implied. *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372 (2000).  Implied preemption, occurs when it is "impossible for a private party to comply with both state and federal requirements."  *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995).

In 2011, the Supreme Court determined in *Mensing* that all state law tort claims attacking the sufficiency of the warnings provided by generic manufacturers about their ANDA-approved drug products are preempted by federal law.  *Mensing*, 564 U.S. 604.  These consolidated lawsuits "involve[d] state tort-law claims based on certain drug manufacturers' alleged failure to provide adequate warning labels for generic metoclopramide."  *Id.* at 608-09.  Faced with the question of "whether federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus pre-empt, these state-law claims[,]" the Supreme Court held unequivocally that they do.  *Id.*  The Court recognized the decision's dispositive impact on all products liability suits against generic manufacturers, holding "because pharmacists, acting in full accord with state law, substituted generic metoclopramide [for the branded product] … ***federal law pre-empts these lawsuits***."  *Id.* at 625 (emphasis added).  The overwhelming majority of state and federal courts have subsequently recognized the plain impact of *Mensing*: no

state law tort claims attacking a generic drug's warnings, representations, or disclosures can survive federal preemption. *See, e.g., Guarino v. Wyeth LLC*, 719 F.3d 1245, 1253 (11th Cir. 2013) (all state warning claims preempted); *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 610-614 (5th Cir. 2014) (affirming dismissal of all claims as preempted); *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 926-936 (6th Cir. 2014) (same); *Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 682 (5th Cir. 2014) (same); *In re Fosamax Products Liab. Litig. (No. II)*, 751 F.3d 150, 165 (3d Cir. 2014) (same); *Lashley v. Pfizer, Inc.*, 750 F.3d 470, 476 (5th Cir. 2014) (same); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 473 (4th Cir. 2014) (same); *Moretti v. Mutual Pharm. Co., Inc*. 518 F.App'x 486, 487-788 (8th Cir. 2013) (same).

This Court has also recognized the impact of *Mensing* and dismissed similar allegations concerning failure to warn. *See Holmes v. Hospira, Inc.*, No. EDCV 12-01708 VAP (DTBx), 2013 WL 12132046, at *10 (C.D. Cal. Jan. 10, 2013). ("Plaintiff's product liability claim [against generic drug manufacturer] for failure to warn . . . is foreclosed by *Mensing*.")

## IV.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim Against Cipla

Plaintiffs' claims are subject to dismissal under Rules 12(b)(6) and 8(a)(2) for failure to state a claim upon which relief can be granted as pled. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs' Complaint does not contain a single factual allegation against Cipla. Rather, the Complaint contains general allegations against all Defendants that are devoid of any factual support. Because Plaintiffs do not allege that Cipla manufactured the specific escitalopram product alleged to have caused K.K.'s suicide and lump all Defendants together, Plaintiffs' claims against Cipla must be dismissed as a matter of law.

//

### 1.      Plaintiffs Have Not Alleged that K.K. Ingested Any Cipla Product

Plaintiffs' Complaint is devoid of any allegation that links the product ingested by K.K. with Cipla.  Plaintiffs' Complaint not only fails to identify a Cipla product at issue, but fails to even disclose whether the decedent K.K. ingested a brand-version or a generic version of escitalopram.  Plaintiffs have provided "no more than a sheer possibility" that K.K. ingested Cipla's product.  Thus, Plaintiffs do not provide any factual allegations that would allow the court to reasonably infer that Cipla is liable in any way.  Accordingly, because Plaintiffs do not allege that Cipla manufactured the specific escitalopram alleged to have caused decedent's injuries, all claims against Cipla must be dismissed.

### 2.      Plaintiffs' Claims Improperly Lump Defendants Together

Plaintiffs' Complaint lacks any specific allegations against Cipla or any other defendants but rather asserts a series of conclusory allegations against "Defendants" or "Defendants and each of them" including alleged fraud, in a section titled "Facts Common to All Causes of Action." (*See* Compl. ¶¶ 11-26.)  When two or more defendants are named in a complaint, plaintiffs must "differentiate their allegations" to give proper notice as to the allegations applicable to each defendant.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  Failure to differentiate between defendants "rob[s] their assertion of plausibility."  *See Atuahene v. City of Hartford,* 10 F.App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [the] minimum standard [of Rule 8].").

Further, the facial plausibility standard requires plaintiffs to plead **specific** facts implicating **each named defendant**.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that **the defendant** is liable for the misconduct alleged.") (emphasis added).  Here, Plaintiffs' Complaint is devoid of specific facts against Cipla

or any other defendants.  And many of Plaintiffs' general allegations are conclusory allegations without any basis or factual support.  For example, Plaintiffs claim that "Plaintiff is informed and believes" that "each and all of the Defendants named herein . . . entered into a partnership, employment relationship imputing vicarious liability, joint venture, and/or principal-agent relationship to carry out all of the acts and omissions herein alleged" and "each of them are jointly and severally liable and/or vicariously liable for the conduct of each of the others." (Compl. ¶ 7.)   All of Plaintiffs' allegations are directed to "Defendants" or "Defendants (and each of them.)"  (*See e.g.*, Compl. ¶ 16) ("Defendants (and each of them) conspired, cooperated, entered into agreements with each other and otherwise worked collaboratively to maximize the financial benefits of the Commercial Efforts while minimizing the dissemination and distribution of the harmful effects of the drug.")  These baseless assertions lump all the defendants together, including generic and brand-name manufacturers of escitalopram, and provide no factual basis to distinguish their conduct.  Thus, the Complaint fails to satisfy the minimum requirements of Rule 8(a).

Moreover, in California, "as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control.  The rule applies whether the injury resulted from an accidental event or from the use of a defective product."  *Sindell v. Abbott Labs.*, (1980) 26 Cal.3d 588, 597-98.  Although there are limited exceptions to this general rule, Plaintiffs have not alleged any viable alternative liability theory.  And, alternative theories of liability such as "concert of action" require more than a litany of claims against multiple defendants for failure to warn.  As the *Sindell* court explained:

> [A] litany of charges is insufficient to allege a cause of action under [concert of action theory].  The gravamen of the charge of concert is that defendants failed to adequately test the drug or to give sufficient warning of its dangers  . . . These allegations do not amount to a charge

1
2

> that there was a tacit understanding or a common plan among defendants
> to fail to conduct adequate tests or give sufficient warnings, and that
> they substantially aided and encouraged one another in these omissions.

*Id.* at 605.  Applying a concert of action theory of collective liability in such industrywide circumstances "would expand the [concert of action] doctrine far beyond its intended scope and would render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant." *Id.*  Plaintiffs' Complaint is devoid of any allegations to convince that there was a tacit understanding or a common plan among defendants to fail to warn K.K. regarding escitalopram.  Furthermore, for an alternative theory of liability such as market share liability theory to even be applicable, Plaintiffs would need to show that the product that was sold to K.K. cannot be identified.  *Id.* at 611-612.  Here, no such showing has been made.

### 3.   Plaintiffs Cannot Satisfy the Rule 9(b) Standard for Their UCL, CLRA, and Fraud Claims

Plaintiffs' allegations under Unfair Competition Law claiming violation of the Cal. Bus. & Prof. Code § 17200 ("UCL"), under California Consumers Legal Remedies Act claiming violation of the California Civil Code § 1770 ("CLRA"), and claims of fraud all fail to satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). Such allegations must be specific to each defendant, not pled in blanket fashion.  Rule 9(b) requires the plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Here, Plaintiffs' baseless fraud allegations, packaged in a variety of claims, are conclusory and fail to satisfy Rule 9(b)'s pleading requirement.  Specifically, Plaintiffs allege that "Defendants implemented a false, fraudulent and misleading nationwide marketing campaign" concerning Lexapro and escitalopram resulting in the injuries and damages described in the Complaint. (Compl. ¶¶ 45-56.)  Plaintiffs further allege that

Defendants violated CLRA by engaging in unfair methods of competition and unfair or deceptive acts or practices undertaken by Defendants, including "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." (Compl. ¶¶ 64-67.) Plaintiffs also allege that Defendants directly and indirectly engaged in fraudulent activity. (Compl. ¶¶ 69-71.)

Notably, Plaintiffs' vague assertions against all "Defendants" do not specify any purported conduct by Cipla in furtherance of this alleged fraudulent conduct. Indeed, Plaintiffs' Complaint does not even attempt to state the time, place or context of any alleged fraudulent acts or omissions undertaken by Cipla. Plaintiffs have also failed to identify the person(s) who purportedly made the alleged fraudulent misrepresentations or who purportedly engaged in fraudulent conduct on behalf of Cipla. Plaintiffs also failed to identify or describe any fraudulent representations purportedly disseminated by Cipla, nor do Plaintiffs describe any reliance by the decedent on any representation or omission by Cipla. Plaintiffs provide nothing beyond general and unsupported allegations, which are insufficient to satisfy the specificity required by Rule 9(b). *See Hospira,* 2013 WL 12132046, at *8 ("Plaintiff's allegations are insufficient to satisfy the 'fraudulent' prong in support of her UCL claim" where "Plaintiff alleges that [Defendant] engaged in fraud, but provides nothing beyond this bare allegation.") Accordingly, Plaintiffs' claims must be dismissed.

**B.    Plaintiffs' Claims Are Preempted by Federal Law and Must Be Dismissed**

All of Plaintiffs' claims against Cipla are premised on allegedly inadequate labeling of generic escitalopram, and failure to adequately warn is, therefore, at heart of each of Plaintiffs' claims. However, because the generic escitalopram is manufactured and distributed pursuant to an FDA approved ANDA, which specified the content of the labeling, Plaintiffs' claims are preempted by federal law and should be dismissed. Indeed, case law exemplified in the table below further necessitates the conclusion that all of Plaintiffs' claims against Cipla are preempted.

| Count | Claim | Exemplary Case Law |
|-------|-------|--------------------|
| I | Product Liability | *Pliva, Inc. v. Mensing*, 564 U.S. 604, 624 (2011) (holding Hatch Waxman Act's requirement that generic drug labeling must stay the same as branded labeling preempts failure to warn products liability claims against generic drug makers); <br><br> *Hospira,* 2013 WL 12132046, at \*10 ("Plaintiff's product liability claim [against generic drug manufacturer] for failure to warn . . . is foreclosed by *Mensing*.") |
| II | Fraud and Deceit | *Gaeta ex rel. A.G. v. Perrigo Pharms. Co.*, 469 F. App'x 556 (9th Cir. 2012) (vacating prior decision and affirming grant of summary judgment on claims for defective design, marketing defect, breach of express warranty, breach of implied warranty, negligence, gross negligence, and deceit by concealment); <br><br> *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. 2243 (JAP-LHG), 2012 WL 181411, at \* 1 (D.N.J. Jan. 17, 2012) (holding that the plaintiff's claims – which "emanated from a general theory of failure to warn, but also included claims based upon various state law products liability theories, including, *inter alia,* defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, violation of consumer protection statutes, restitution, and loss of consortium"—are preempted under *Mensing* and therefore granting the generic manufacturer's motion for judgment on the pleadings) |
| III | Breach of Warranty | *Gaeta ex rel. A.G. v. Perrigo Pharms. Co.*, 469 F. App'x. 556 (9th Cir. 2012) (vacating prior decision and affirming grant of summary judgment on claims for defective design, marketing defect, breach of express warranty, breach of implied warranty, negligence, gross negligence, and deceit by concealment) |
| IV | Violation of the California Civil Remedies Act | *Perez v. Nidek Co*. Ltd., 657 F. Supp. 2d 1156, 1164 (S.D. Cal. 2009), *aff'd*, 711 F.3d 1109 (9th Cir. 2013) ("Plaintiffs' CLRA and UCL claims are dismissed |

| Count | Claim | Exemplary Case Law |
|-------|-------|--------------------|
| | | because they impermissibly seek private enforcement of the FDCA.") |
| V | Violation of Business and Professions Code §17200 | *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1164 (S.D. Cal. 2009), *aff'd*, 711 F.3d 1109 (9th Cir. 2013) ("Plaintiffs' CLRA and UCL claims are dismissed because they impermissibly seek private enforcement of the FDCA."); <br><br> *Summit Tech., Inc. v. High-Line Med. Instruments Co. Inc.*, 922 F. Supp. 299, 316 (C.D. Cal. 1996) (Plaintiff may not bring a § 17200 claim that is, in fact, an attempt to state a claim under the federal FDCA.) |
| VI | Negligence | *Gaeta ex rel. A.G. v. Perrigo Pharms. Co.*, 469 F. App'x. 556 (9th Cir. 2012) (vacating prior decision and affirming grant of summary judgment on claims for defective design, marketing defect, breach of express warranty, breach of implied warranty, negligence, gross negligence, and deceit by concealment) |
| VII | Wrongful Death | *Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179, 190 (E.D.N.Y 2012) (dismissing plaintiffs' wrongful death claim because it did not supply "an independent basis of recovery" and "claims upon which [it] depends are preempted under *Mensing*") |

### 1.    Plaintiffs' Failure to Warn Claims Are Preempted

Though wrapped in various baseless legal theories, each of Plaintiffs' claims against Cipla is, in essence, a failure-to-warn claim for purportedly inadequate warnings for its generic escitalopram.  *See supra* section II.B.  Thus, the essence of Plaintiffs' claims is that the escitalopram labeling was inadequate and that Defendants, including Cipla, failed to satisfy their state law duty to provide accurate warning of the risks of associated with use of escitalopram.  Numerous courts have recognized that each of these theories is, at its core, premised on allegedly defective warnings.[2]

---

[2] *See, e.g. Brinkley v. Pfizer, Inc.*, No. 10-0274-cv-W-SOW, 2012 WL 1564945, at *3-6 (W.D. Mo. Apr. 12, 2012) (granting motion for judgment on the pleadings on strict liability design defect, breach of express and implied warranties, violations of Missouri Merchandising Practices Act, failure to communicate warnings, failure to update warnings, and failure to

Under Plaintiffs' theories, Cipla or its affiliates should have altered the escitalopram label to provide new, different, and stronger warnings. According to Plaintiffs, the Defendants had knowledge of the dangerous side effects in teenage users of escitalopram but gave no warning of these side effects, all while concealing their knowledge of them. (*See* Compl. ¶¶ 31, 51, 62, 67, 71, 74.) However, if Cipla or its affiliates "had independently changed their labels to satisfy their state-law duty, they would have violated federal law." *Mensing*, 564 U.S. at 618. Federal drug regulations demand "that generic drug labels be the same at all times as the corresponding brand-name drug labels." *Id.* Thus, failure-to-warn claims against manufacturers of generic pharmaceutical products are preempted, because it is "impossible" for generic manufacturers to simultaneously meet both state and federal law. *Id.*

Here, Plaintiffs seek to impose a duty upon Cipla to change the content of the warnings provided with escitalopram. However, to the extent Plaintiffs can prove K.K. used escitalopram manufactured by Cipla or its affiliates, it is undisputed that it is a generic drug. (Compl. ¶ 5(g).) Whether grounded in a theory of product liability, fraud, warranty, violation of California Civil Remedies Act, violation of Business and Professions Code section 17200, negligence, wrongful death, or otherwise, all of Plaintiffs' causes of action purport to enforce a state-law duty requiring Cipla or its affiliates to change the allegedly inadequate warnings provided with escitalopram. But the controlling Supreme Court precedent makes clear that federal law foreclosed such

withdraw or stop selling the product, holding "that plaintiff is simply trying to backdoor claims against [the generic manufacturer] that the Supreme Court have found to be preempted" and noting that, "[a]t its core," the plaintiff's case is nothing more than a failure-to-warn claim); *Moretti v. Mutual Pharm. Co.,* 852 F.Supp.2d 1114, 1118 (D. Minn. 2012) (granting motion for judgment on the pleadings on claims of negligence, misrepresentation, constructive fraud, violations of state statutes, negligent infliction of emotional distress, negligent misrepresentation, fraud by concealment, failure-to-communicate, failure-to-conduct-and-report-post-market-safety-surveillance, and failure-to-withdraw, and holding that "[d]espite the different 'labels' given these claims, the essence of these claims is that important safety information as to [a generic drug] was not disseminated, or made clear, to the public or to the medical community.")

action.  *Mensing* unequivocally held that state law claims based on alleged failure to provide adequate warnings, such as those asserted by Plaintiffs here regarding Cipla's escitalopram, directly conflict with and are preempted by federal statutes and regulations forbidding generic drug manufacturers from unilaterally altering or strengthening the warnings accompanying their drugs.  *Mensing*, 564 U.S. at 617-624.  And the overwhelming majority of state and federal courts, including California courts in the Ninth Circuit, have recognized the plain impact of *Mensing*: no state law tort claims attacking a generic drug manufacturer's warnings, representations, or disclosures about the risks of their generic drugs can survive federal preemption.  *See e.g.*, *Gaeta ex rel. A.G. v. Perrigo Pharms. Co.*, 469 F. App'x. 556 (9th Cir. 2012) (vacating prior decision and affirming grant of summary judgment on claims for defective design, marketing defect, breach of express warranty, breach of implied warranty, negligence, gross negligence, and deceit by concealment); *Hospira,* 2013 WL 12132046, at *12 (granting motion to dismiss for claims related to warning, failure to consult with FDA, 'dear doctor' letter, and other forms of communication); *Ko v. Mutual Pharm. Co. Inc.*, No. C-13-00890-RMW, 2013 WL 5692375, at *2 (N.D. Cal. Oct. 18, 2013) (granting motion to dismiss for all warning claims including warranty and unfair competition).

All of Plaintiffs' theories, therefore, are preempted and require dismissal.

### 2. Plaintiffs' Nebulous Design and Manufacturing Defects Are Preempted

Plaintiffs Complaint includes vague claims of "defects" and alleges defendants' escitalopram was "defective and unreasonably dangerous . . . in that . . . the warnings, instructions and directions failed to warn…." (*See* Compl. ¶ 34.)  Plaintiffs further allege that "[a]lthough Defendants knew of the defective nature of Lexapro, they continued to design, manufacture, market and sell it without providing accurate, adequate and complete warnings…." (Compl. ¶ 39.)  However, Plaintiffs fail to provide any factual allegations supporting these claims.  Indeed, these dubious claims related to design and manufacturing defects are directly preempted by *Bartlett*.  In *Bartlett*, the

Supreme Court held that state-law design-defect claims that turn on the adequacy of a drug's warnings are pre-empted by federal law under *Mensing*. *Bartlett*, 133 S. Ct. at 2472-3.

Moreover, to gain and keep ANDA approval, generic drug manufacturers must show their products are bioequivalent to their branded or RLD counterparts. *See* 21 U.S.C. § 355(j)(2)(A)(i)-(iii) (ANDA applicants must demonstrate a generic drug contains the same active ingredient(s); employs the same route of administration; presents the same dosage form; and exhibits the same strength as its brand name counterpart). Federal law explicitly requires a generic drug to be "identical [to its branded equivalent] in active ingredients, safety, and efficacy," just as each generic drug must "ensur[e] that its warning label is the same as the brand name's." *Mensing*, 564 U.S. at 612 n.2, 613. A vast majority of courts have similarly found state law design defect claims preempted.[3] Thus, as the Supreme Court found in *Bartlett*, Plaintiffs' state-law design and manufacturing defect claims are also preempted and must be dismissed.

Furthermore, as discussed, federal law barred Cipla or its affiliates from altering its label, and consumer expectations are necessarily guided by a product's warnings. Therefore, when warnings are adequate as a matter of law (because of preemption or otherwise), a plaintiff cannot then backdoor a collateral attack on the warnings under the guise of design claim. *See Papike v. Tambrands, Inc.*, 107 F.3d 737, 743 (9th Cir. 1997) ("[Defendant's] warnings met the federal requirements and [plaintiff's] design defect claim therefore fails the 'consumer expectation' test. To rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate.")

---

[3] *See e.g., In re Fosamax*, 751 F.3d at 165 ("*Mensing* and *Bartlett* recognize that manufacturers have no control over the design or labeling of generic drugs."); *Drager*, 741 F.3d at 476 (design defect claims preempted); *Strayhorn v. Wyeth Pharms., Inc.,* 737 F.3d 378, 397 (6th Cir. 2013) (same).

BROWN WHITE & OSBORN
A T T O R N E Y S

### 3.    Plaintiffs' California UCL and CLRA Claims Are Preempted

Plaintiffs similarly assert baseless allegations regarding violation of UCL and CLRA.  As an initial matter, as discussed above, Plaintiffs have alleged no specific misrepresentation or omission and their claims are therefore subject to dismissal under the heightened pleading standards of Rule 9(b).  Specifically, Plaintiffs claim violation of CLRA and UCL because, for example, "Defendants knew that patients and parents had the right to know about the harmful, known side effects of Lexapro and Escitalopram . . . but concealed and intentionally misrepresented same." (Compl. ¶¶ 67, 71.)  Plaintiffs' UCL and CLRA claims are de facto failure-to-warn claims under FDCA, simply disguised as claims under state law UCL and CLRA.  Such claims are squarely preempted. *See Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1164 (S.D. Cal. 2009), *aff'd*, 711 F.3d 1109 (9th Cir. 2013) ("Plaintiffs' CLRA and UCL claims are dismissed because they impermissibly seek private enforcement of the FDCA."); *Summit Tech., Inc. v. High-Line Med. Instruments Co. Inc.*, 922 F. Supp. 299, 316 (C.D. Cal. 1996) (Plaintiff may not bring a § 17200 claim that is, in fact, an attempt to state a claim under the federal FDCA.)

Moreover, Plaintiffs' claims under UCL and CLRA that Cipla or its affiliates labeling and marketing of its escitalopram product was false and misleading are expressly and impliedly preempted under Supremacy Clause by provisions of FDCA, which regulate the labeling and marketing of prescription drugs.  U.S. Const. art. VI, cl. 2.  And the Supreme Court's decision in *Mensing* requires that all state law claims arising from allegedly defective escitalopram labeling be dismissed because it is impossible to comply with both federal drug regulations and state tort and statutory duties.  Indeed, Plaintiffs' UCL and CLRA claims are preempted because they seek to impose requirements on Cipla that are in addition or not identical to FDCA.  *See Eckler v. Neutrogena Corp.*, (2015) 238 Cal. App. 4th 433, 455-459 (Consumer's claim under UCL and CLRA that sunscreen manufacturer's package labeling on products with sun protection factor (SPF) above 50 was false and misleading was expressly and impliedly

preempted under Supremacy Clause by provisions of FDCA regulating ingredients and labeling of nonprescription, over-the-counter drugs, since consumer's suit sought requirements in addition or not identical to FDCA.)  Because all of Plaintiffs' UCL and CLRA claims purport to enforce a state-law duty requiring Cipla or its affiliates to change the allegedly inadequate warnings provided with generic escitalopram, the claims are preempted under federal law.

### C.   Plaintiffs Failed to Meet the Notice Requirements Mandated by California Civil Code Section 1782(a)

Plaintiffs' Complaint, which includes allegations of violation of California Civil Code § 1770, must be dismissed based on Plaintiffs' failure to provide Cipla pre-filing notice as required by California Civil Code § 1782(a).  Specifically, section 1782(a) provides that "thirty days or more prior to the ***commencement of an action for damages***" under the CLRA, the consumer "shall" notify the potential defendant "of the particular alleged violations of Section 1770," and demand that he or she "correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770" (emphasis added).  The 30-day letter has to be in writing and must be sent by "***certified or registered mail, return receipt requested***, to the place where the transaction occurred, or to [such] person's principal place of business within California." Cal. Civ. Code § 1782(a)(2) (emphasis added).

Failure to satisfy the clear requirements of section 1782(a)(2) mandates dismissal with prejudice where proper notice is not provided.  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ("[Section] 1782 scrupulously prohibits any action for damages unless its notice provisions are met. As stated, the Legislative goals would be eviscerated if consumers were allowed to sue for damages without first providing the statutorily mandated period for remediation."); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (Failure to provide wireless service provider with timely notice barred claim against provider under CLRA).

1  Because Plaintiffs failed to provide pre-filing notice to Cipla, as required by
2  California Civil Code § 1782(a), Plaintiffs' claims must be dismissed.

3  **V.    CONCLUSION**

4  For the foregoing reasons, this Court should dismiss all of Plaintiffs' claims
5  against Cipla because they are insufficiently pled.  Plaintiffs' claims are also preempted
6  by federal law and no further amendment will cure the preemption of the claims against
7  Cipla.  Further, Plaintiffs' claims are barred for failure to satisfy state-law notice
8  requirements.  Accordingly, Cipla respectfully requests that the Court grant its Motion
9  to Dismiss and dismiss Plaintiffs' claims against it with prejudice for failure to state a
10  claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

11  Dated:  August 7, 2017          Respectfully submitted,

13  By  _s/Kenneth P. White_

14      BROWN WHITE & OSBORN LLP
        KENNETH P. WHITE (SBN 173993)

15      Local Counsel for Defendants
16      CIPLA, LTD. and CIPLA USA, INC.

18      WILEY REIN LLP
        NEAL SETH (*Pro Hac Vice*)
19      KARIN HESSLER (*Pro Hac Vice*)

20      Counsel for Defendants
        CIPLA, LTD. and CIPLA USA, INC.

- 20 -